Thank you, Your Honor. I please the court. Robert Dunn appearing for appellants. I will try to reserve five minutes for rebuttal. I would appreciate the court's assistance on that. For the past year, Your Honor, defendants have prohibited thousands of schools from offering in-person education to millions of California students. And as plaintiffs' uncontroverted declarations make clear, the experiment with distance learning has been an educational disaster for their children. And the evidence in the record similarly demonstrates that hundreds of thousands of other children, most underprivileged backgrounds, minorities, have similarly been deprived of even a basic minimum education. Can I ask you a question on that point? This is not a class action, is it? It is not, Your Honor. So are there any plaintiffs who lack internet access? Yes, Your Honor. Are there? I read the declarations. I didn't see any declaration that said any plaintiff was being denied access to remote education. Where would I find that? Plaintiff Bima, I think, is probably the most clear. She said it wasn't that she lacked internet access. It was that it was... Well, that's the question I asked. So answer the question I asked. Does anybody lack internet access? I don't believe any of them lack complete internet access, no. I just had two preliminary questions, and then you can get back to this. You're not appealing the IDEA denial, right? Correct. And you're also not raising any California state law claims? Correct. Okay. I'm sorry. Those were just preliminary backgrounds. Go ahead, please. I have another preliminary question, which is that it appeared to me that reviewing the complaint and the declarations collectively, some of the plaintiffs made no showing as to even what type of school they go to. And so I'm unsure if we were to conclude that there's a difference between a private school plaintiff and a public school plaintiff. I don't know what to do with those, other than perhaps to conclude that they didn't carry their burden on summary judgment. Your Honor, the record, you're right, is not entirely clear as to each plaintiff. The vast majority of them are public school plaintiffs. But you were confronted with a summary judgment order, so you need to come forward with enough to make your case or you're going to be thrown out. And some of your plaintiffs don't seem to have any showing. So I assume that those are just gone, if we were to conclude that it matters which type of school they go to. Yes. If you were to conclude which type of school that mattered for each plaintiff, some of the declarations are not specific as to that, correct? Okay. So the issue that I think is at center in this case, and I want to make sure you get to it before we take you astray again, is, is there a federal constitutional right to education? Because I know you have alternative arguments, but at least to me, that's the first issue. Tell me why we should be the first court, other than, I guess, the Sixth Circuit that eventually vacated the decision, to find a federal constitutional right to education. Absolutely, Your Honor. Yes, in our view, there is a federal fundamental right to a basic minimum education. As we presented in the briefs, our basic argument here is that the right has been recognized since, essentially, before the founding of the Republic. The importance of education has even grown in importance, both at the time of the ratification of the 14th Amendment. Essentially, every state recognized it, but Congress required states to essentially have public education for readmission into the Union. And since that time, the Supreme Court has increasingly recognized the importance of education. Well, isn't it fair to say that the Supreme Court's increasingly either said, we don't have such a right or we don't need to decide today whether we have one? Is there any Supreme Court case that recognizes a fundamental right to education? No, I think all the parties agree the Supreme Court has not yet explicitly recognized that right. So I would put... So I'm trying, if it's a due process right, as you contend, is it a Fifth Amendment due process right also, or just a 14th Amendment due process right? Well, to the extent that education has always been provided by the states, I think for our purposes, it's a 14th Amendment right. So that's what I was trying to ask you. You believe the 14th is broader than the Fifth with respect to substantive due process? With respect to this right, I think it would probably be in the same vein as Obergefell in that respect, that marriage has always been a state-initiated, essentially, arrangement. And the court never said that the federal government would need to step in and create marriage arrangements, but it did hold that the 14th Amendment required states to recognize certain marriage arrangements. Or did it hold... Because Obergefell was central to your argument. Didn't Obergefell just hold that the states were not free to deny whatever arrangements they had to same-sex couples? Obergefell didn't mandate that the states have a status of marriage, did it? No, I think what Obergefell really does is it essentially stands for the proposition that a state has decided to confer a benefit, and that benefit is central to the right. And so the benefit itself can't be deprived from anyone. I guess my question, I'm not sure I know the answer to this, but I've read Obergefell as saying, look, state, if you want to have a status of marriage and confer rights that go with it, you can't deny that status to same-sex couples. But I don't read it as saying you must have a status of marriage. And that's what the analogy concerns me, because I'm not sure I read the 14th Amendment as saying you must have public education, but if you do, you can't discriminate in it. So why is that reading wrong? Well, I would point you to Justice Thomas's dissent in that case. I think his reading of his basic disagreement with the opinion is that the court is requiring states to confer benefits, which in his view was essentially beyond the scope of the liberty concept inherent in the 14th Amendment. So from his view, the court was doing exactly what we're asking for here. He's dissenting. He's dissenting, so I assume that means the court doesn't agree with him, does it? No, the point is his dissent is explaining what the majority is doing. His reason for dissenting is because the court was doing specifically that. It was providing or requiring states to provide benefits. So it's interpreting the majority opinion, not... Yeah, fair enough. And I guess Justice Marshall's dissent in one of the other cases that says, despite what you say, court, there is a fundamental right to education, is something we might use in the same vein. Well, yeah, I mean, Justice Marshall was just cited yet in Kattermoss. I don't know. Don't we get to choose our dissenters? It's okay. Go ahead. Well, what do you do about Rodriguez? Because Rodriguez seems pretty clearly to draw a distinction between claiming a right to a state-provided benefit and having state interference in private conduct. And yet you seem to be saying that you have, notwithstanding Rodriguez, a federal constitutional right to a certain quality of education to be provided by the state. Yeah, I don't think Rodriguez precludes that at all. I think Rodriguez is quite specific that although the plaintiff in that case did assert a right to a basic minimum education, that that wasn't being deprived. And so the court really had no reason to decide whether or not... They did not have a fundamental right at issue, didn't they? Well, what the court says is there's no fundamental right to education. It basically, sort of broadly, such that any modification with it needs to be applicable to strict scrutiny. And we don't contest that, such that Kattermoss wasn't subject to strict scrutiny, because even though there was education involved, the busing fee may have placed a slight burden on education. There was no deprivation of the rights to basic minimum education. So I think partly it's a matter of narrowing the scope of the right. We're not asking that essentially any change or any burden on education anywhere triggers strict scrutiny. That would be... In your narrowing of the scope of the right, let's assume there is a right. What you're really saying is you have a right to an in-person education, aren't you? If the California schools were all operating today with in-person education and it was terrible, it was just the worst in-person education in the world, would you have a claim? Well, according to the Sixth Circuit panel that got vacated, yes, of course. The point is this. I think it's not in-person education per se. If the state... Is it higher quality remote education that you're being denied? No. In our view, if the state could provide the basic minimum education virtually, such that virtual education involved avatars of people and kids had the exact same experience remote as they did in person, fine. That would be a different case. Our point is this. Both for our plaintiffs and for hundreds of thousands of other kids... Turn that to hundreds of thousands of others. It's not a class action. Focus on your plaintiffs. It's not a class action. I would put those declarations, those expert declarations, as essentially supporting the argument that this is a failure. It's essentially additional evidence that... Well, but I guess my question is, and I want to be explicit about this, how do we measure as an Article III court whether the level of... If it's not the question of being remote as opposed to in-person, how do we measure as an Article III court whether the education being provided to California students falls below this constitutional minimum that you say California is required to adhere to? What's our metric? Well, I think the baseline metric is, are the teachers showing up? So we had one of our declarants said, the math teacher never showed up at any point during the whole spring. So there was no math instruction. Does the internet connection provide reliable contact with the information? Any information can be conveyed. Like I said, Plaintiff Bima and others have provided evidence that that doesn't happen. We've had other declarants who've said they've basically got a couple hours a week of virtual education versus seven hours a day in the classroom. So I don't think you have to get super fine grain on this to see some kids are literally just not being educated at all. But if we were to rule in your favor, presumably we would order California not to reopen schools because you say it's not in-person that's important, it's quality that's important. And we would have to order them to provide education of a certain quality level. And so I'm trying to figure out how we would do that. I really like my colleagues. They're very smart and able, but I'm just not sure how the three of us arrive at that order. Tell us what the order says. I think in this case, it actually is quite easier. It's easier than maybe you might think. To the extent that the current regime of barring in-person education categorically is depriving plaintiffs and others of a basic minimum education, all the court has to do is say that order is clearly an infringement of this right. And essentially that would return it to status quo where each local school district and school in the case of private schools and charter schools would have to make this decision for themselves. The court doesn't actually have to order the state to affirmatively change anything other than essentially reverting back to the status quo. You say by your standards that each school district sets its own criteria, whether it's in-person or on the tube or whatever way, and that would meet what you want, right? As an initial matter, yes. Then how do we determine the quality of that? Well, so that I think is how the law develops. I think there could well be school districts that could decide for idiosyncratic reasons that in-person learning is still to this day too dangerous to basically be contemplated, and they could essentially announce their decision. And if that is subject to further challenge, then the law could develop and we could figure out whether that particular school district has been able to provide a basic minimum education, and if not, whether it can satisfy strict scrutiny anyway. But this court doesn't need to decide that for every school district across the state. It's the categorical ban which is the problem here. I told you I'd watch the clock for you. If you want to save the rest for rebuttal, that'd be great. But please continue if you want to continue. No, I'm happy to reserve. Thank you. Let's hear from the state. May it please the court, Jennifer Bunchoff, appearing on behalf of the Pelley's. There are two narrow issues presented here. First, whether the challenged state public health orders violate substantive due process under the 14th Amendment. And second, whether they violate the Equal Protection Clause of the 14th Amendment. Isn't the question under both prongs the same? In other words, unless we have a fundamental right here, I don't think there's any argument that we're dealing with a suspect classification. So we're back to rational basis review. And I know the other side argues that we're in a rational basis review, but that's harder. So tell us why. Tell us why they're wrong. There isn't some right to education implicit in the Due Process Clause. Well, I think first, and your honors touched on this earlier, the Supreme Court precedent very strongly says that there is no fundamental right to an education. And that started in Rodriguez draws a distinction between the education the state provides and interference with private conduct. And some of the plaintiffs here very clearly, both in the complaint and in their declarations, attend private schools. So their claim cannot be a Rodriguez type claim. By definition, they are asking that the state be stopped from interfering with their ability to that does not seem to be on the same side of Rodriguez. It seems to be Meyers and Pierce. Why isn't that subject to strict scrutiny? A two part response to that. And the first, your honor, is that plaintiffs didn't raise that. I don't see that. It's on the face of the complaint. You cannot read that complaint. If it has private school parents as asserting a Rodriguez claim, they're not asking the state to provide a basic minimum education. They're asking the state to stop interfering. And they cited the field case in their initial opposition, and they cited Meyer and their reply. It may not be an extensive presentation, but it's certainly there. Yes, your honor. To the extent the court is considering it, the right that is set forth in those cases is the right of a private school parents to choose the education forum. And here they have. That right has not been barred by the challenge state orders. You think that under Meyer and Pierce, the ability of the state to tell people that they can't get together in a room and have instruction is subject to rational basis? Yes, your honor. The right there is simply prohibits the state from saying you can't choose to send your child to a parochial school or to a private school or to a particular public school. And so there has not been any extension of the right to say whether it has to be done in one form. I mean, what they're saying, they are being provided. The question I ask you is at the level of the definition of the right. We're not even getting to whether or not a pandemic justifies additional restrictions. But you say that the state has the power subject only to rational basis to tell people that they cannot get together in a room or instruction. That's the state of California's position? In as far as the right that is set forth in those cases, what it says is that the state cannot prohibit the parent under the liberty interest from sending their child to the school of their choice. And here they have the declarations are clear that these parents have chosen to send their kids to private school and that these children are attending private school. Now, it's not the means that they prefer. Were they virtual or outdoors or were they in a building and in a room? No, they were not outdoors. I am not sure that technology at that time. You mean the right in light of the history, it would be the right to have people come together in order to have instruction in a classroom and a school setting. That would be the traditional understanding of the right in Meijer and Pierce, right? Meijer and Pierce doesn't talk about the right of students to be together in a room. It's really about the choice of private versus public school settings. So, I mean, traditionally an understanding of school would be that students are together, but I don't see the cases as touching on that particular right of assembly issue and plaintiffs haven't argued that they were denied a right of assembly. Would you say that you can only perform plays over the internet? Would that be subject to rational basis because the right doesn't include the right to get together? I think that would be subject to rational basis review, but of course the state would have to show that they had an interest that was being served. I mean, there's still a constitutional scrutiny under the rational basis test, but even if the answer were different there, that's clearly not what's happening here given the strong interest, indeed compelling interest, as recognized by the Supreme Court that the state has in protecting the health of its people. And as the case law is clear, the right of private school parents is subject to public health orders. Can I, I wanted to ask you a question about, I'm sorry Judge Collins, can I tell from the complaint or the declarations which students go to private schools and which ones go to public schools? It's clear with some of the students, the parents say that my child is attending private school, but it's not, they are very fuzzy and it's not clear what's the names of the schools that the students are attending. So in some cases they may already be back in school with in-person instruction, particularly those who are in the elementary school because of how many waivers have been granted. So that is, I mean, that is definitely a problem with the way that this case is being collected. Let me ask you a question about where you and Judge Collins started. I see a citation to Pierce. I guess I'm wondering whether Judge, I know Judge Collins is a better lawyer than everybody else, but I'm wondering whether he's a better lawyer in this case than the plaintiffs have been. I don't see an argument based on Meyer or Pierce in the summary judgment briefing. I see one citation to Meyer and Pierce in the TRO application and I see another one later on in the reply. But was it, was an argument developed to the trial court along the lines that Collins just made? Your Honor, that is absolutely correct. There was no argument developed before the trial court at any point, particularly not in the summary judgment briefing. So that was not before the court and it is in fact a different right. There's quite a difference between the right of an individual student to an education, which is what has been at issue in this case, and the very separate right of a parent under the traditional privacy interests that are protected under a substantive due process that is asserted under the line of cases with Pierce and Yoder and Fields in the Ninth Circuit case. It's quite a different right and it was not fairly presented below and not ruled upon and therefore should we submit should not be decided here. Now, I'm still interested in the factual question. Can I tell from the complaint whether or not anybody who's, or the declarations, whether anybody whose child is going to private school has been denied the right to attend in person? I believe there are some, at least one declaration that may say that, that they've, that they have at least at some point attended school remotely. However, whether any of them are still not in school or in-person school is unclear and that was not developed. And that leads to my other question that I had, which is really unrelated, but what's the status of the current orders? Is, are the orders in front of us the extant orders or are there others that have come out in the meantime? Your Honor, the orders that are in effect currently have modified somewhat since the orders that were challenged and that were presented before the district court below, because the briefing was completed as of September 2020 and the court issued its decision December 1st. There have been, as attached to the request for judicial notice, there was some January 14th guidance that does modify somewhat the prior order. In particular, it has to do with the elementary waiver process. It doesn't modify it in any significant way. The general approach is the same. The cohort guidance is still in effect. So the approach taken by the state, which is, you know, tier based, so tier one, which is also referred to as the purple tier, schools may not open for in-person instruction subject to two very important restrictions. I mean, exceptions one being the elementary waiver process based on the science around TK. I understand that. I guess I was trying to ask a different question. Are, do we now know whether the plaintiffs still reside in tier one counties? Have the restrictions that might be applicable to these plaintiffs changed over time? Your Honor, that evidence is not in the record. And even beyond that, as some of the plaintiffs just alleged, they lived in Los Angeles County or San Diego County and attended public school. So it's not clear which public school they attend. And that's significant because what these orders are about is saying when schools can't open or exceptions where they can, it doesn't require that a school or district does open when they can. And so, for instance, San Diego, during the course of this litigation, moved out of the highest tier and schools and districts were able to open even at the middle and high school level. So whether in fact students who, you know, involved in this case were, you know, were attended schools that could have opened but chose not to, we really don't know that. Is there any allegation in this case? And again, I apologize. I've reviewed the record. I didn't see one, but I may have missed it. Is there an allegation that some of the parents want to send their children to a parochial school or a religious school that is somehow affected by this order? I believe that at least one parent may have a child who attends a parochial school. And they are, in fact, attending. I think it's the question is whether they're receiving in-person instruction or... Okay, but there's no First Amendment free exercise claim being made here? No, Your Honor. They have not brought a First Amendment claim at all in this case. So I guess I want to get back to where we started with Mr. Dunn. Do you think the state of California could just simply say, gee, this education experiment's been fun, but it's cost us a lot of money and to heck with it. We're not going to provide public education anymore. Is that within the state's prerogatives? Put aside the state constitution, I understand. Yes, yes. I think a decision would... Again, a substantive due process right would not require... Not what I'm asking. I'm asking whether the state of California could say tomorrow, we've decided to stop providing public education. People are free to send their children to private schools because Pierce and other cases seem to give them that right. But we do not want to cost us a lot of money, and we're not happy with the results. Could it do it? Under the Supreme Court, the precedent is that there is no fundamental right to an education. So then your answer must be yes. Subject to constitutional scrutiny, and then that might kick into Plyler where there would be... Need to show a substantial interest in that. Plyler was denying a specific group of people a public education, undocumented alien children. And I think that's one thing, but the state didn't say, we're just giving up on the whole system. So I'm still asking the question, could the state do away with public education? Again, forgetting what the California constitution says, I'm just thinking as a federal constitutional matter. I mean, as the case law stands under the federal constitution, it appears that it could. However, of course, that is nowhere near the case here where there are state constitutional provisions that impact education, as well as the fact that here there are many education code and legislative provisions. So that's really a question that then would be resolved in the... That's why it's a hypothetical. I know it's not this case, but it seems to me, unless you think the state could do away with public education entirely, then you must think there's some sort of fundamental constitutional right to it. There is not a fundamental constitutional right under the 14th amendment to an education or to yes. However, there are many other things that would impact that determination. So it's just not a likely scenario ever, and would still be subject to constitutional scrutiny. And in particular, under Plyler, that would... In Plyler, even though it's based on a particular group being denied education, that may be something where a court could say that that denial would not survive rational basis review. I wanted to go back to the issue you were saying before about if any of the claims were subject to strict scrutiny, you would still survive that. I read the Diocese of Brooklyn and other cases essentially saying that an in-person cap of zero is not narrowly tailored. Am I wrong in reading that that way? The Roman Catholic Diocese case addressed that in the context of the First Amendment, which is not an issue here, but more... Still strict scrutiny. My hypothetical was if strict scrutiny applies to any of the claims in this case, would an in-person cap of zero be consistent with what the Supreme Court has said in those cases about the tailoring on the strict scrutiny there? Here, the orders don't deny the right for all schools to provide in-person education. It is specifically on the rates of COVID in the community subject to exceptions. That was true in large portions of the state. I think there were four counties that were exempt in the cases in front of the Supreme Court. There would be counties in large flats of the state where it would be an in-person cap of zero. My question again is, is that consistent with the striking down of an in-person cap of zero for churches as not sufficiently tailored? The district court below did not consider whether strict scrutiny applied because there had never been any recognition of a fundamental right to an education. No, but that's not what Judge Collins is asking you. I mean, don't fight the hypothetical. He's saying assuming strict scrutiny applies, is this narrowly tailored? He gives you the example of another place where strict scrutiny applies, where the court has found that a zero cap is not narrowly tailored. See if you can respond to his question. Yes. Although it's not briefed or presented in the record below and was not considered by the court, should strict scrutiny apply, then yes, we believe that the orders are narrowly tailored to meet that, including where there's a tier one county where students are not permitted to come in for in-person instruction, and that's because of the cohort guidance. And the cohort guidance applies for all grade levels regardless of the tier, and that specifically allows small groups of students to come in for in-person instruction, and particularly for those who are most at risk of not being able to access distance learning, whether based on lack of productivity and devices, based on being students with disabilities, students in foster care, homeless students, those who are not attending virtual school. So there is an exception. There's no absolute ban. So it's different from the Roman Catholic Diocese case because here, schools can bring back students for in-person instruction in small cohorts. How many other states currently have a prohibition on in-person instruction of the scales that we have in this case? Your Honor, I'm not aware of the number of other states. I am aware that there are other states that have some similar restrictions on in-person instruction, but again, California has had some of the worst rates of COVID and some of the highest death rates. As of yesterday, there's over 3.4 million cases of COVID in the state and over 52,000 deaths. So the state has had to take an approach to protect the public health and safety of its people from this unprecedented and deadly pandemic. So it's different states have different experiences with COVID and many do not have the same experience that California does. So it's not necessarily a relevant comparison. I think we've taken you over. So I thank you for your argument and Mr. Dunn, you've got a fair amount of time save for rebuttal. Thank you, Your Honor. I've got a lot to say, so that's good. A couple of points. Irrespective of what the court ultimately decides with regards to fundamental rights and whether to be the first court to recognize a fundamental right, we think it's beyond dispute that education is quasi-fundamental or at least so important that typical rational basis cannot apply. So in Plyler, the dissenters described it as creating a quasi-fundamental right. Again, sometimes helpful to see how the dissent characterizes the majority. In one of the district court opinions that we cited, Derry v. Bonham, which sort of is describing how rational basis with bite works, it cites Plyler as being one of the cases to apply rational basis with bite. So whether you describe it as a heightened scrutiny for a quasi-fundamental interest or an important right that should subject to something more than just rational basis. Well, but the Plyler, even assuming Plyler is rational basis with bite, wasn't it dealing with discrimination? Discrimination was there. Yeah, and that's the way the district court case you cite describes the cases that do it with bite as cases involving some sort of discrimination. In Plyler, it was you're an alien child, you're not going to get any education at all. Is it really true that we would look at all restrictions on education under a heightened standard of review? Not all restrictions on education, certainly. I mean, I think that's the lesson from Plyler. If it's a quasi-fundamental right, wouldn't we look at all restrictions under a heightened level of review? Again, to be clear, the quasi-fundamental right is the right to a basic minimum education, not the right to have a bus for free, not the right to have the school spend the same amount of money on your school as somebody else's school. It's the core right to a basic minimum education. That's what rational bite kicks in when that right is. So if California decided to stop teaching math, could you come to court and enforce a federal constitutional right to have them continue to teach math? I think so. I think math is part of the core curriculum of a basic minimum education. Math is fundamental, as the commercials say. Yeah, I tend to agree with that. Literacy, math, basic history, these types of things. Again, all stuff that can be worked out in future cases. Whereas here, if you just have essentially a blanket denial of in-person education that is preventing kids from being educated meaningfully at all in any subject, you don't have to decide that. Now to pivot quickly, I realize that there is an issue with the Myers-Pierce argument in preservation. Judge Collins is undoubtedly a better attorney than anyone on our side of the table. And on our side too. Well, yeah, I'll leave that for you guys in conference to discuss. But he is correct. The complaint clearly specifies that there are, by my count, five plaintiffs that go to private schools. And the complaint raises a substantive due process challenge. Assuming that's true, you went to summary judgment. I'm more concerned about the summary judgment. Your complaint may survive a motion to dismiss on that. You go to summary judgment, and I see one mention of the Pierce case. And in the midst of an extensive and, I must say, very well-written summary judgment briefing. And so, how is that fairly before the district court at summary judgment? Your Honor, in our view, we cited the relevant cases. The right is well-established, and we clearly, you know, hooked the flyer for the proposition that parents do have that right. Let me read you the, put aside the TRO opposition for a second, because now we're at summary judgment. There are four lines in your opposition. As the Supreme Court explained in Brown v. Board of Education, the most important function of state and local governments, and then it goes on to say Siegmeyer v. Nebraska. It doesn't say we have a special right as private school students to choose our own thing. It's clearly made in the context of arguing that there's a fundamental right to public education. And so, put aside your complaint, because I think it can be fairly read to make this argument. But you get to summary judgment, and when you oppose it, you don't say, wait a minute, our private school students have a separate argument than everybody else. You just cite Meyer in a string cite. How does that preserve the issue? Well, as Your Honor mentioned, it may not have been teed up perfectly for the district court. As we explained in our opening brief and in our reply brief, the issue is essentially a purely legal issue. It's before the court. It's encompassed within the larger issue. So even if we can't fault the district court for failing to rule on it, which we don't, we think that this court can reach it. And that, I think, is the more main point. We are not faulted. Or you can make it, your private school plaintiffs can make it in a separate lawsuit because it wasn't ruled on in this one. Could also conceivably be the case. But in our view, this court can reach it because it is purely legal and at least encompassed within the broader scope of the complaint and of the claims asserted. Two other issues. One, as the state's counsel mentioned, the orders here have been changing weekly, monthly. They change all the time. I think last night the state announced some $6 billion plan to try to fund schools to get them back in person. So obviously none of that is currently in the record. But from our perspective, if the issue is mootness, counties have been snapping back and forth between the red tier and the purple tier since August, since the blueprint was announced. Los Angeles County, I believe, has never left the purple tier unless they go there today. But they've been in purple tier the whole time. So schools have never been allowed to open. And others, as you mentioned, go to red tier and then kick back to purple tier. And if the school didn't sort of get its act together and open immediately, they were once again blocked. So from our perspective, this clearly makes it an exception to mootness. The barrier that our plaintiffs are facing is capable of repetition and evading review. We shouldn't have to bring a new lawsuit every time, you know, a county snaps back into the purple tier. I have a factual question for you, and it was one I asked your friend. Can I tell from the private school, or is enrolled in a private school, because attends is a loaded word here, that school wishes to provide in-person education? The question is whether you can tell what the school intends to provide? Yeah. In other words, I mean, I suppose you'd have no, even if the Meyer issue were appropriately raised, you'd have no Meyer requirement that the school you were going to offer you in-person education. No. So the question is, do any of those schools, is there anything in this record for which I can tell whether that school intends to offer in-person education or wishes to, but has been prevented to by the state order? I see. There isn't anything from the school district. So for example, we don't have a declaration. No, but even from the parents, even the parents that say my private school would provide in-person education, but for this order. Well, I believe all of them have essentially said that, and I don't think they would have brought the case if their school had said, we're not opening anyway. Well, do they say it? They file declarations. They want to do away with the state orders. I understand that, but just, you know, I always hate to use anecdotal examples, but there are lots of private schools in Phoenix that are free to reopen. They're not ordered by the state not to reopen, who have said, no, we're not going to do it. We think it's too dangerous. There are others that have. So I'm trying to figure out whether any of your clients have in fact been prevented from going to a private school that would offer them in-person education. I believe Hackett, plaintiff Hackett may have had something in there, but I would have to go back and look at all the- I'll go back and look. That's just, if you identify the client, I can go look. Yeah, that'd be the first one I'd look at, but it looks like I'm over my time here, if I'm looking at that correctly. You're over your time because we enjoy talking to you. So make sure that my colleagues don't have further questions. If not, I want to thank both sides for their argument briefing in this case. Excellent jobs. And we will take this case under submission. And with that, the morning session today will be in recess. Thank you, Otter.
judges: Siler, Hurwitz, Collins